**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE UNDER THE INDENTURE RELATING TO IMH ASSETS CORP., COLLATERALIZED ASSET-BACKED BONDS, SERIES 2007-A | Case No.: 6:15-cv-343-Or-28KRS |

Plaintiff/Respondent

v.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and LAKELAND REGIONAL MTG CORP.

Cross Defendants/Respondents

v.

ERIC KESSOUS,

Defendant,

---

## PLAINTIFF'S MOTION FOR REMAND AND SUPPORTING MEMORANDUM OF LAW

Plaintiff, by and through its counsel, hereby files this Motion for Remand and supporting Memorandum of Law directed to Defendant Eric Kessous' Notice of Removal [ECF 1] and Third Party Complaint [ECF 2], and states as follows:

### BACKGROUND

1. Plaintiff filed its Mortgage Foreclosure Complaint in the Ninth Judicial Circuit in and for Orange County, Florida on July 2, 2009, seeking to foreclose on real property owned by

Defendant Kessous (hereinafter, "Defendant" or "Kessous") and located in Orange County, Florida.

2. Defendant Kessous filed his Answer and Affirmative Defenses on or about September 16, 2011. Copies of the Complaint and Answer are attached hereto as Composite Exhibit "A." Importantly, Defendant's Answer fails to assert a counterclaim or raise any defenses that would invoke the Court's federal question jurisdiction.

3. On March 4, 2015, the day of trial, Defendant filed an untimely Notice of Removal to Federal Court with the Circuit Court, alleging that the Circuit Court lacked jurisdiction to hear this matter. This Notice of Removal was filed over three (3) years after Defendant was served and answered the Complaint. Additionally, the Notice of Removal was the first time that any of the allegations, including those within what Defendant has styled "Third Party Complaint" (as discussed in more detail below), in support of removal had been raised in this matter. As a result of Defendant's filing of the Notice of Removal in Circuit Court, the Circuit Court dismissed this action pending further direction from this Court.

4. The Notice of Removal attempts to assert the existence of subject matter jurisdiction pursuant to 28 U.S.C. § 1441 by broadly alleging, without any specific facts, that Plaintiff violated federal laws. However, none of these "facts" were previously raised during extensive litigation spanning more than three (3) years in Circuit Court, and conveniently were only brought to light on the day of trial.

5. Contemporaneously with the filing of the Notice of Removal, Defendant filed both the same Notice of Removal [ECF 1], and a separate pleading entitled Removal from State Court to Federal Court and Third Party Complaint (hereinafter, "Third Party Complaint"), in which Defendant is requesting the Court move the litigation initiated in the Circuit Court to the Federal Court [ECF 2].

6. Defendant's Third Party Complaint mirrors the conclusory allegations raised in the Notice of Removal, and fails to specify any ultimate facts that various federal laws were violated. Furthermore, though captioned as Removal from State Court to Federal Court and Third Party Complaint, this pleading is no more than a counterclaim improperly filed without leave of the Circuit Court.

7. Additionally, Defendant's Notice of Removal and Third Party Complaint fail to demonstrate that diversity exists between the parties, and as such, diversity cannot serve as a basis for subject matter jurisdiction. Aside from federal question, diversity serves as the only other basis for subject matter jurisdiction.

8. Finally, Defendant has failed to comply with Rule 4.02(b) of the Local Rules governing this District in omitting "a true and legible copy of all process, pleadings, orders, and other papers or exhibits of every kind" with his Notice of Removal.

9. Accordingly, and as set forth in more detail below, this Court lacks subject matter jurisdiction to hear this case, and must be remanded back to the Circuit Court for further proceedings, including trial.

## MEMORANDUM OF LAW

### I. Removal is Untimely

Defendant is not permitted to remove a state matter to federal court at any time he pleases during litigation; Defendant's time frame to remove is restricted by federal statute. Pursuant to 28 U.S.C. § 1446(b)(1), a "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant...." Defendant was served with Plaintiff's Mortgage Foreclosure Complaint on August 30, 2011. Thus, Defendant should have filed a Notice of Removal no later than September 29, 2011. However, Defendant instead chose to file a Notice of Removal on

March 4, 2015, the day of trial – 1283 days after he was served with the Complaint, and 1253 days beyond the time limit imposed by statute to remove the action.  Clearly, Defendant cannot avail himself of removal pursuant to 28 U.S.C. § 1446(b)(1).

Should Defendant seek to remove this case based upon diversity[1], removal based upon diversity of citizenship under 28 U.S.C. § 1446(c)(1) requires a notice of removal to be filed no more than "1 year after commencement of the action…"  The one year time limit creates "a sufficient incentive for defendants promptly to investigate the factual requisites for [removal]." *Lovern v. General Motors Corp.*, 121 F.3d 160, 163 (4th Cir. 1997).

Defendant's Notice of Removal was filed more than five (5) years after commencement of this action, and more than three (3) years after he was served with the Complaint. Defendant failed to investigate his allegations or timely exercise any removal rights and is now barred from removal by a matter of years.  It is inapposite which vehicle Defendant attempts to remove under, whether 28 U.S.C. § 1446(b)(1) or 28 U.S.C. § 1446(c)(1), as Defendant is conclusively time-barred from removing this case.  Defendant has had ample time to investigate his claims, and has failed to do so in a timely manner.  Defendant cannot now attempt to utilize removal as a means to strategically delay the proceedings and disadvantage Plaintiff.

## II.  Removal is Improper as this Court Lacks Subject Matter Jurisdiction

Notwithstanding the untimeliness of Defendant's Notice of Removal, it also fails to raise any valid basis to invoke this Court's subject matter jurisdiction.  "28 U.S.C. § 1447(c) requires a court to remand a removed case if at any time before final judgment it appears that the court lacks subject matter jurisdiction." *Pullins v. Hagins*, 2015 U.S. Dist. LEXIS 35820 (M.D. Fla. 2015); *see also* 28 § U.S.C. 1447.  "Statutes authorizing removal of actions to federal courts are to be strictly construed against removal." *Diebel v. S.B. Trucking Co.*, 262 F. sup. 2d 1319, 1326 (M.D. Fla. 2003), citing

---

[1] Defendant has filed his Notice of Removal and Third Party Complaint based upon federal question, as is clearly indicated in his civil cover sheet.  However, Plaintiff is also addressing diversity of citizenship as the only other vehicle under which Defendant may demonstrate subject matter jurisdiction.

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941), and citing also *Burns v. Windsor Ins. Co.*, 31 F. 3d 1092, 1094 (11th Cir. 1994) ("Removal statutes are construed narrowly; where the plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."). It is apparent from the face of Defendant's Notice of Removal and Third Party Complaint that this Court lacks subject matter jurisdiction, and that this Court is required to remand this action to the Circuit Court.

Subject matter jurisdiction is a creature of federal statute, and two statutes exist to confer this jurisdiction upon federal courts. Consistent with the limited nature of federal jurisdiction, the party seeking a federal venue must establish the venue's jurisdictional requirements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Under this traditional rule, the defendant, having removed the case to the district court, would bear the burden of establishing the court's jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). As is shown below, Defendant has failed to meet this burden.

28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This type of subject matter jurisdiction is commonly referred to as federal question subject matter jurisdiction. "The well-pleaded complaint rule has long governed whether a case 'arises under' federal law for purposes of § 1331." *The Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 830 (2002). Under this rule a federal question "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Venezuela v. Massimo Zanetti Beverage U.S.A., Inc.*, 525 F. Supp. 2d 781, 784 (E.D. Va. 2007) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-113 (1936)). For a federal question to be present on the face of a complaint, it must establish a cause of action that is rooted in federal law, or plaintiff's right relief depends on the resolution of substantive question of federal law. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).

This Court does not have subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the claims contained Plaintiff's Complaint are entirely premised on state law, and Defendant failed to

assert a violation of federal law in his Answer. Defendant also failed to file a counterclaim asserting any violation of federal law at any time, and removed this lawsuit well past the one (1) year limit in an effort to avoid proceeding to trial on March 4, 2015. Moreover, although Defendant includes federal statutes in his Third Party Complaint, this is no more than an improperly filed separate action. Additionally, although on its face this is captioned as a separate action, the Third Party Complaint is merely a counterclaim improperly filed without obtaining leave of the Circuit Court. As such, Defendant has clearly failed to establish this Court's subject matter jurisdiction based upon a federal question, and has failed to meet the burden imposed by *Lujan* and *Gaus*.

Additionally, Defendant has failed to establish subject matter jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332, which is the only other method to establish this Court's subject matter jurisdiction. Defendant states and alleges that Plaintiff is a registered foreign corporation in the State of Florida, and that the Defendant Lakeland Regional Mortgage Corp., is a Florida Corporation. Of note, however, Defendant does not set forth his own state citizenship in any manner, rather plainly stating he is a citizen of the United States. As the underlying action herein is an in-rem foreclosure of a primary residence in the State of Florida, and Defendant has participated in the state litigation since 2011, it is clear that Defendant Kessous is a citizen of the State of Florida, and therefore, diversity jurisdiction is lacking. *Tucker v. Thomasville Toyota,* 623 F. Supp. 2d 1378 (M.D. Ga. 2008) (noting the distinction between "residency" and "citizenship," as well as the fact that "[a] party must plead citizenship distinctly and affirmatively" and a failure to allege citizenship or domicile is insufficient to invoke jurisdiction). Therefore, just as Defendant failed to establish subject matter jurisdiction based upon a federal question, Defendant has failed to establish subject matter based upon diversity of citizenship.

### III. Defendant's Removal is Procedurally Defective

Defendant's attempt at removal in this matter is ineffective, as Defendant has failed to follow proper procedures. 28 U.S.C. § 1446(a) provides that in order to effect a removal, a defendant must

file a notice of removal "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." Additionally, Local Rule 4.02(b) states: "[t]he party effecting removal shall file with the notice of removal a true and legible copy of all process, pleadings, orders, and other papers or exhibits of every kind, including depositions, then on file in the state court." Case law supports the requirement that the state court record <u>must</u> be included to effect removal. *See Andalusia Enterprises, Inc. v. Evanston Ins. Co.,* 487 F. Supp. 2d 1290, 1300 (N.D. Al. 2007) (where an action was remanded, among other reasons, because the removing party failed to include the court record required by 28 U.S.C. § 1446(a)); *see also Harris Corp v. Kollsman, Inc.*, 97 F. Supp. 2d 1148, 1151 (M.D. Fla. 2000) ("[u]nder 28 U.S.C. 1447(c) the court may remand an action to state court based upon any defect in the removal procedure, including an untimely filed notice of removal.").

Defendant has failed to file such papers in this action, as is clearly demonstrated by the Circuit Court docket attached hereto as Exhibit "B." As such, Defendant's attempt at removal of this action is procedurally defective, and should be remanded. Not only is this attempt at removal procedurally defective, it is entirely ineffective pursuant to both federal statute and local rule, and as such, no duty to respond to such ineffective and improper filings arose in this matter.

## CONCLUSION

Based on the foregoing, Defendant has failed to show that removal of this action is proper. Defendant has failed to demonstrate jurisdictional propriety, and Defendant has filed his Notice of Removal in derogation of the limitations periods set forth in 28 U.S.C. §§ 1446(b) and 1446(c)(1). The issues raised in Plaintiff's Complaint seeking foreclosure of real property presents issues of solely state law and relating to the location of the real property at issue, and therefore, no subject matter jurisdiction exists based upon a federal question. Additionally, Defendant has failed to set forth any facts alleging or substantiating diversity citizenship in this matter that would grant this Court the requisite subject matter jurisdiction. Lastly, Defendant has failed to comply with both a federal statute

and local rule regarding the filing of the state court record in order to effectuate removal in this matter. Plaintiff would submit to this Court that Defendant's filing of the Notice of Removal and Third Party Complaint was made for the primary purpose of delay of the underlying state court action and the impending trial, and as such is violative of Rule 11, Fed.R.Civ.P.

WHEREFORE, Plaintiff respectfully requests that this Court grants its Motion to Remand, and remand this case to the jurisdiction of the Circuit Court of Orange County, Florida, prohibiting Defendant from filing a further Notice of Removal, awarding Plaintiff attorney's fees, and other and all further relief this Court deems just and proper.

RESPECTFULLY SUBMITTED this **22nd day of April, 2015**.

By: /s/ Peter J. Kapsales
Peter J. Kapsales, Esq.
Fla. Bar No.: 91176
McCalla Raymer, LLC.
Attorney for Plaintiff
225 E. Robinson St. Suite 660
Orlando, FL 32801
Phone: (407) 674-1850
Fax: (321) 248-0420
Email: MRService@mccallaraymer.com

I hereby certify that on April 22, 2015 I electronically transmitted this document to the Clerk's office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF Registrants

Albert R. Cook, Esq.
1211 State Road 436
Suite 127
Casselberry, FL 32707
arcpa@mpinet.net

Eric Kessous
2611 Tilton Ct.
Orlando, Florida 32835

Ronit Kessous
882 Placid Lake Drive
Osprey, FL 34229

Unknown Spouse of Eric Kessous
2611 Tilton Court
Orlando, FL 32835-6153

Bank of America, National Association
16686 S.W. 88th Street
Miami, FL 33196

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL
CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 09-CA-21456

DEUTSCHE   BANK   NATIONAL   TRUST
COMPANY, AS INDENTURE TRUSTEE UNDER
THE INDENTURE RELATING TO IMH ASSETS
CORP.,   COLLATERALIZED   ASSET-BACKED
BONDS, SERIES 2007-A,

        Plaintiff,

vs.

ERIC KESSOUS, _____ KESSOUS, unknown spouse
of ERIC KESSOUS, if married, RONIT KESSOUS,
BANK OF AMERICA, NATIONAL ASSOCIATION,
PEMBROOKE HOMEOWNERS ASSOCIATION,
INC., JOHN DOE, JANE DOE,

        Defendants.

_____/

COMPLAINT FOR FORECLOSURE
OF MORTGAGE AND FOR DAMAGES

Plaintiff, DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE UNDER THE

INDENTURE RELATING TO IMH ASSETS CORP., COLLATERALIZED ASSET-BACKED BONDS, SERIES 2007-

A, sues Defendants, ERIC KESSOUS, _____ KESSOUS, unknown spouse of ERIC KESSOUS, if married, RONIT

KESSOUS, BANK OF AMERICA, NATIONAL ASSOCIATION, PEMBROOKE HOMEOWNERS ASSOCIATION,

INC., JOHN DOE, JANE DOE, and alleges:

COUNT I - ACTION ON PROMISSORY NOTE

1.     This is an action for damages in excess of $15,000.

2.     On December 9, 2003, ERIC KESSOUS and RONIT KESSOUS, executed and delivered a promissory note (the

"Note") to LAKELAND REGIONAL MORTGAGE CORPORATION.  A true and correct copy of the Note is

attached hereto as Exhibit A.

3.     Plaintiff owns and holds the Note.

4.     Defendants, ERIC KESSOUS and RONIT KESSOUS, failed to pay the payment due on the Note on February 1,

2009, and Plaintiff elected to accelerate payment of the balance.

5.     Defendants, ERIC KESSOUS and RONIT KESSOUS, owe Plaintiff $173,172.67, together with interest from

January 1, 2009, on the Note.

6.     All conditions precedent to the institution of this action have been performed, waived, or excused.

7.     Plaintiff is obligated to pay its attorneys a reasonable fee for their services.


**EXHIBIT A**

WHEREFORE, Plaintiff demands judgment against Defendants, ERIC KESSOUS and RONIT KESSOUS, both jointly and severally liable, for damages, interest, costs, attorneys' fees, and such further relief as the Court deems proper.

## COUNT II - ACTION TO FORECLOSE MORTGAGE

Plaintiff realleges Paragraphs 2 and 3.

8.    This is an action to foreclose a mortgage on real property in Orange County, Florida.

9.    On December 9, 2003, ERIC KESSOUS and RONIT KESSOUS, husband and wife executed and delivered a mortgage (the "Mortgage"), securing payment of the Note to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., acting solely as a nominee for LAKELAND REGIONAL MORTGAGE CORPORATION. The Mortgage was recorded on December 26, 2003, in Official Records Book 7242, at Page 2183, of the Public Records of Orange County, Florida, and mortgaged the property described therein, which was then owned by and in the possession of the mortgagor. A copy of the mortgage is attached hereto as Exhibit B.

10.    Said Mortgage was assigned to Plaintiff by virtue of the Assignment of Mortgage attached hereto as Exhibit C.

11.    Plaintiff owns and holds the Note and Mortgage.

12.    The property is now owned and possessed by Defendant, ERIC KESSOUS.

13.    Defendants, ERIC KESSOUS and RONIT KESSOUS, his wife, defaulted under the Note and Mortgage by failing to pay the payment due February 1, 2009 and all subsequent payments.

14.    Plaintiff declares the full amount payable under the Note and Mortgage to be due.

15.    Defendants, ERIC KESSOUS and RONIT KESSOUS, owes Plaintiff $173,172.67, representing principal due on the Note and Mortgage, interest from January 1, 2009, and title search expenses for ascertaining necessary parties to this action.

16.    Defendant, _____ KESSOUS, unknown spouse of ERIC KESSOUS, if married may be in possession of the subject property and may claim some right, title, or interest in the subject property by virtue thereof. Any such claim is junior and inferior to the Mortgage.

17.    Defendants, JOHN DOE, JANE DOE, may claim some right, title, or interest in the subject property by virtue of being in possession of the subject property. Any such claim is junior and inferior to the Mortgage.

18.    Defendant, BANK OF AMERICA, NATIONAL ASSOCIATION, may claim some right, title, or interest in the subject property by virtue of a certain mortgage encumbering the subject property, which is inferior to Plaintiff's mortgage.

19.   Defendant, PEMBROOKE HOMEOWNERS ASSOCIATION, INC., may claim some right, title, or interest in the subject property by virtue of a lien or claim based upon unpaid maintenance or assessment payments. Any such claim is junior and inferior to the mortgage.

20.   In addition to the above named Defendants, the unknown spouses, heirs, devisees, grantees, assignees, creditors, trustees, successors in interest, or other parties claiming an interest in the subject property by, through, under, or against any of said Defendants, whether natural or corporate, who are not known to be alive or dead, dissolved, or existing, are joined as Defendants herein. The claims of any said parties are subject, subordinate, and inferior to the interest of Plaintiff.

21.   All conditions precedent to the institution of this action have been performed, waived, or excused.

22.   Plaintiff is obligated to pay its attorneys a reasonable fee for their services.

WHEREFORE, Plaintiff demands:

a.   That this Court adjudges the lien of the Mortgage to be a valid lien upon the subject property, superior to the rights, claims, interest, and liens of all the Defendants and any and all persons claiming by, through, under, or against Defendants, subsequent to the filing of the Lis Pendens.

b.   That an accounting be made of the sums due Plaintiff under the Note and Mortgage, and if the sum is not paid within the time set by this Court, that the property be sold in accordance with Section 45.031, Florida Statutes, and that all Defendants made parties to this cause, and all persons claiming under or against said Defendants since the filing of the Notice of Lis Pendens, be foreclosed.

c.   That if the proceeds of the sale are insufficient to satisfy Plaintiff's claim, that a Deficiency Judgment be entered.

d.   That the Court grant such further relief as it deems proper.

### COUNT III - REESTABLISHMENT OF NOTE

Plaintiff realleges Paragraphs 2 and 3.

23.   This is an action to reestablish a lost instrument, pursuant to § 673.3091, Florida Statutes.

24.   The Note executed by ERIC KESSOUS and RONIT KESSOUS, has been lost or destroyed.

25.   Plaintiff is unaware of the time and manner of such loss or destruction.

26.   Plaintiff or its predecessor or its successor was in possession of the subject Note and was entitled to enforce it when the loss or destruction occurred.

27.   The loss of possession was not the result of a transfer by Plaintiff or a lawful seizure.

28.   Plaintiff has not been able to locate the Note after diligent search.

29. Plaintiff cannot reasonably obtain possession of the Note because it was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

30. A substantial copy of the Note is attached hereto as Exhibit A.

31. Defendants are the only parties known to Plaintiff who are interested for or against the reestablishment of the Note.

32. The Note has not been pledged, assigned, transferred, hypothecated, or otherwise disposed of.

WHEREFORE, Plaintiff demands judgment reestablishing the Note.

DATED at Miami, Miami-Dade County, Florida, this _____ day of June, 2009.

(FBN: 13727)

Sean M. Moloney
Florida Bar No. 638358
Adorno & Yoss LLP
Attorneys for Plaintiff
P.O. Box 143107
Miami, FL 33114-3107
Telephone: (305) 460-1100
Facsimile: (305) 460-1421

NOTICE PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT
15 U.S.C. § 1692

1.      The amount of the debt is as stated in the Complaint attached hereto.

2.      The Plaintiff, as named in the attached Complaint, is the creditor to whom the debt is owed.

3.      The debt described in the Complaint will be assumed to be valid by the creditor's law firm unless you (the debtor) dispute the validity of this debt, or any portion thereof, within thirty (30) days after receipt of this notice.

4.      If you (the debtor) notify this firm within thirty (30) days of this notice, that the debt or any portion thereof is disputed, we will obtain verification of the debt and a copy of the verification of the debt will be mailed to you (the debtor).

5.      If the Plaintiff in the attached Complaint is not the original creditor, and if you (the debtor) make a written request to this law firm within thirty (30) days from receipt of this notice, the name and address of the original creditor will be provided to you (the debtor).

6.      The law does not require this law firm to wait until the end of the thirty (30) day period referred to in Paragraphs 3, 4, and 5 of this Notice before suing you to collect the debt. If however, you request proof of the debt or the name and period which begins with your receipt of this Notice, the law requires this law firm to suspend our efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you.

7.      Written requests should be addressed to Adorno & Yoss LLP, P.O. Box 143107, Miami, FL 33114-3107.

### Notice to Homeowner
### Lender Contact and Mediation Information

This Notice to Homeowner is required by Administrative Order of the Ninth Judicial Circuit Court for cases pending in Orange County. It is given to you at the time of service of process by the Plaintiff/Lender, with the summons and complaint for foreclosure. The following contact information and phone numbers and addresses to their loan workout department is for your use. If the Lender has a debt relief or home loan loss mitigation program in effect, information and access to the program including any 1-800 numbers is provided below:

How to Contact your Lender (on the loan currently being foreclosed for non-payment):

Your Lender is: Deutsche Bank National Trust Company, As Indenture Trustee Under The Indenture Relating To IMH Assets Corp., Collateralized Asset-Backed Bonds, Series 2007-A

You can call: 805-520-5100 or 800-669-6087

### Right to Mediation

You may request that the court order mediation in your case before a final judgment or foreclosure sale of your property. You have been served with a complaint from your Lender. **TO WHICH YOU MUST FILE AN ANSWER WITHIN 20 DAYS.** That means send a copy of your answer to the complaint to the courthouse clerk's office and by mail to the other parties in the lawsuit. In that answer, or by separate pleading, you can request mediation. By requesting mediation you are not excused from filing an answer to the complaint being served on you. You must answer **WITHIN 20 DAYS** or you will be in default in the lawsuit.

Mediation is most appropriate where you have already tried to contact your Lender (or have been unable to) and still feel you have the financial ability to reinstate or modify your loan or come to some other mutually agreeable workout. In mediation, you will be required to meet with a representative of the Lender who has authority to discuss your loan and with a mediator who will try to facilitate a settlement. By electing to participate in this mediation program you are agreeing to bring your wage, bank account, credit card, and other financial information relating to your income and debts to the mediation and you are agreeing to disclose this information to the Lender. You may discuss: 1) reinstatement of the mortgage , 2) refinance, 3) sale of your home, or 4) foreclosure sale.

Additional information regarding mortgage foreclosures and landlord/tenant matters is available at the **Court Resource Center**. Room 365, 3rd Floor of the Orange County Courthouse located at 425 N. Orange Ave., Orange, FL 32801. Information on how to find a lawyer is available from the Orange County Bar Association's **Lawyer Referral Service** by calling 407-422-4537.

ADMINISTRATIVE ORDER
No. 2009-02

IN THE CIRCUIT COURT OF THE

NINTH JUDICIAL CIRCUIT, IN AND

ORANGE COUNTY, FLORIDA

### ADMINISTRATIVE ORDER GOVERNING MANDATORY CIRCUIT COURT MEDIATION FOR OWNER-OCCUPIED RESIDENTIAL MORTGAGE FORECLOSURES

**WHEREAS,** residential mortgage foreclosure cases have significantly increased in Orange County, Osceola County, and the entire State of Florida throughout 2008 and continuing into 2009; and

**WHEREAS,** the judges in the Orange County Circuit Civil Division are routinely advised by both banks and owner-occupant litigants that due to high volumes, communication has been difficult between representatives of the lender and homeowners; and

**WHEREAS,** in many cases the first opportunity for the owner-occupant litigants to discuss potential resolution short of judicial sale is at a hearing on the lender's motion for summary judgment; and

**WHEREAS,** the failure of the parties to communicate effectively in a timely fashion results in unnecessary waste of judicial resources and court staff time, all of which could be obviated in whole or in part by mediation; and

**WHEREAS,** Florida Rule of Civil Procedure 1.700(a) provides that the judge may enter an order referring all or any part of a contested civil matter to mediation; and

**WHEREAS,** loan modification and foreclosure relief plans available to homeowners are rapidly evolving due to changes in bank policies and state and federal regulations, of which foreclosure counsel may be unaware; and

**WHEREAS,** board certified mediator members of the Orange County Bar Association have agreed to provide mediation services at reduced fees to lessen the cost of mediation in owner-occupied foreclosure cases; and

**NOW, THEREFORE, I,** Belvin Perry, Jr., pursuant to the authority vested in me as Chief Judge of the Ninth Judicial Circuit of Florida under Florida Rule of Judicial Administration 2.1215, order the following, effective immediately and to continue until further order:

1.    The Court shall have the option of referring a case to mediation at anytime, including at the time of any hearing on motion for summary judgment. Plaintiff-Lenders are encouraged to engage in pre-suit mediation to avoid the continued burden on the Clerk of the Court and the judiciary.

2.    Plaintiff-Lenders in foreclosure proceedings will be required to deliver at the time of service of process on Defendant-Debtor, a Notice to Homeowners of contact information including phone numbers and addresses to their loan workout department and notice of homeowners' right to mediation attached hereto as Exhibit "A." In addition, if the Lender has a debt relief or home loan loss mitigation program in effect, it shall provide the Debtor with information and access to the program including any 1-800 numbers.

3.    If the Defendant-Debtor has requested mediation, Counsel for the Plaintiff shall coordinate and schedule the case for mediation within 45 days of the answer or paper served or filed by the Defendant making such request.

4.    A list of Board Certified Civil Mediators who are willing to provide mediation services at significantly reduced rates will be maintained by the Orange County Bar Association at their website: www.ocbanet.org. If the parties cannot secure a certified mediator from that list, or elsewhere, the presiding judge shall be notified by Plaintiff's counsel and compliance with this Order shall be temporarily excused until such time as a mediator is appointed by the court. The Plaintiff shall make a reasonable effort to coordinate the mediation with all parties and shall give the Defendant-Debtor and any non-defaulted inferior lien-holders reasonable advanced notice of the date, time, and place of the mediation.

5.    Personal communication by the Plaintiff's counsel with the Defendant-Debtor is expected to occur within 30 days of answer to the Complaint. If counsel for the Plaintiff-Lender after diligent effort and personal communication with the Defendant-Debtor in person or by telephone, learns that the Defendant-Debtor does not have any ability or willingness to work with the Plaintiff-Lender and is unwilling to engage in any loss mitigation efforts, then the counsel for the Plaintiff-Lender may file a Notice of Good Faith Communication and may be excused from compliance with this Order. The Notice shall state:

**The undersigned counsel for [Plaintiff/Lender] hereby certifies that he/she has personally communicated with [Defendant-Debtor] in connection with this residential foreclosure and the debtor**

has not demonstrated any willingness to work with the lender and in the opinion of counsel no useful purpose could be served by a mediation conference.

It is anticipated that the certification permitting the Plaintiff/Lender to forgo compliance with mediation will be used sparingly and in light of the ever-evolving programs and forms of relief becoming available. Any attorneys who shall file certifications without personal communication, or who in bad faith engage in efforts to avoid compliance with this Order shall be sanctioned. Attorneys are expected to communicate in person or by telephone with the Defendant-Debtor and a certification may not be filed by an attorney based on communication between the attorney's staff or lender representatives and the debtor.

6.    **The Mediation:** A representative of the Plaintiff-Lender with full authority to settle must participate in the mediation and attendance of the representative must be continuous throughout the mediation session. If the mediation representative for the Plaintiff-Lender is more than 25 miles from the proposed location for the mediation or outside this Circuit, attendance by telephone shall be permitted. However, the Plaintiff's counsel should be present in person at the mediation session if the Plaintiff's representative is attending by telephone. Notice of attendance by telephone must be given to the Defendant-Debtor or Defendant's counsel and a toll-free number should be provided for use by the mediator or the parties as needed. Plaintiff's counsel, the Defendant (and Defense counsel if any for non-defaulted parties) must appear at the mediation in person or seek an order of relief. If the Defendant fails to appear at a properly noticed mediation without good cause, or if the matter impasses after mediation, the matter may be promptly noticed for final or summary judgment providing all of the requirements of the rules of procedure have otherwise been met. If the Plaintiff fails to appear at mediation or if there is no representative with full settlement authority the action may be subject to dismissal or other sanctions may be imposed.

7.    The Plaintiff-Lender shall provide a copy of this Order to the Defendant-Debtor and the Debtor is obligated to make good faith efforts to comply with reasonable requests for information concerning the Debtor's ability to pay, expenses and income as a pre-requisite to mediation. By furnishing this information the Debtor may help the Lender identify potential programs or other means of assistance and potential workouts.

8.    **Fees:** Initial costs of the mediation should be borne by the Plaintiff-Lender at a rate of $275.00 for 2 hours of mediation. One-half of the mediator's fee may be claimed as costs and included within a final

judgment.  Unless otherwise agreed to with the mediator, any fee charged by the mediator shall be paid by the

Plaintiff or Plaintiff's counsel within 20 days from the date of the mediation.  If mediation takes more than 2

hours, the fee to be applied shall be at a rate of $100.00 for each hour thereafter.  If a Plaintiff fails to appear at

mediation, if the mediation cannot go forward at the scheduled time due to the Plaintiff or Plaintiff's counsel, or

if the mediator is not notified 48 hours in advance that a mediation session has been canceled or is unnecessary,

then the mediator shall be entitled to a cancellation fee equal to 2 hours of mediation time payable by the

Plaintiff.

**DONE AND ORDERED** at Orlando, Florida this 25th day of February, 2009.

/s/

Belvis Perry, Jr.
Chief Judge

Copies to:
Clerk of Courts, Orange County
Clerk of Courts, Osceola County
General E-Mail Distribution List
http://www.ninthcircuit.org

```
INSTR  20030736027
OR BK  07242   PG 2183
MARTHA O. HAYNIE, COMPTROLLER
ORANGE COUNTY, FL
12/26/2003  10:40:39 AM
MTG DOC TAX 645.75
INTANG TAX 369.00
REC FEE 91.50
```

Record & Return to:
Titlecorp of Florida
355 S. Ronald Reagan Blvd.
Longwood, Florida 32750

Return To:

LAKELAND REGIONAL MORTGAGE CORPORATION POST
CLOSING
4310 SOUTH FLORIDA AVENUE
LAKELAND, FL 33813

This document was prepared by:

L. Hill
LAKELAND REGIONAL MORTGAGE CORP.
4310 SOUTH FLORIDA AVENUE
LAKELAND, FL 33813
(863) 682-2106

3L091916

—————————————————[Space Above This Line For Recording Data]—————————————————

# MORTGAGE

MIN  100103004815362092
MERS Phone: 1-888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated           DECEMBER 09, 2003
together with all Riders to this document.
(B) "Borrower" is
ERIC KESSOUS AND RONIT KESSOUS, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is
LAKELAND REGIONAL MORTGAGE CORPORATION

Initials B.K.

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3010 1/01
VMP-6A(FL) (0005)                    Page 1 of 16        LENDER SUPPORT SYSTEMS, INC. MERS6AFL.NEW (06/03)

EXHIBIT D

INSTR  20030736027
OR BK 07242 PG 2184

Lender is a CORPORATION
organized and existing under the laws of  FLORIDA
Lender's address is
4310 SOUTH FLORIDA AVENUE, LAKELAND, FL 33813
(E) "Note" means the promissory note signed by Borrower and dated        DECEMBER 09, 2003
The Note states that Borrower owes Lender
ONE HUNDRED EIGHTY FOUR THOUSAND FIVE HUNDRED AND NO/100 X X X X X X X X X X X X X X X X X

Dollars

(U.S. $ 184,500.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than   JANUARY 01, 2034
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[XX] Adjustable Rate Rider      [ ] Condominium Rider          [ ] 1-4 Family Rider
[ ] Graduated Payment Rider    [ ] Planned Unit Development Rider   [ ] Biweekly Payment Rider
[ ] Balloon Rider              [ ] Rate Improvement Rider      [ ] Second Home Rider
[ ] Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

VMP-6A(FL) (0005)                      Page 2 of 16                          Form 3010  1/01

INSTR 20030736027
OR BK 07242 PG 2185

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the                    COUNTY
[Type of Recording Jurisdiction] of          ORANGE               [Name of Recording Jurisdiction]:

LOT 31, PEMBROOKE, ACCODING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 22, PAGES 7-10, PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA.

Parcel ID Number:                                    which currently has the address of
                              2811 TILTON CT                                    [Street]
              ORLANDO                       [City], Florida       32835      [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

VMP-6A(FL) (0005)                        Page 3 of 16          Initials: R.K          Form 3010 1/01

INSTR  20030736027
OR BK 07242 PG 2186

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

VMP-6A(FL) (0005)                                  Page 4 of 16                          Initials: R.K   Form 3010  1/01

INSTR  20030736027
OR BK  07242 PG 2187

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

VMP-6A(FL) (0005)                          Page 5 of 16                          Initials: R·K          Form 3010  1/01

INSTR   20030736027
OR BK 07242 PG 2188

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

VMP-6A(FL) (0005)                             Page 6 of 16                             Form 3010  1/01

INSTR   20030736027
OR BK   07242 PG   2189

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

VMP-6A(FL) (0005)                              Page 7 of 16                                    Initials: _____   Form 3010   1/01

INSTR 20030736027
OR BK 07242 PG 2190

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

VMP-6A(FL) (0005)                                Page 8 of 16                               Form 3010   1/01

INSTR  20030736027
OR BK 07242 PG 2191

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreement will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

VMP-6A(FL) (0005)                    Page 9 of 16                    Form 3010  1/01

INSTR 20030736027
OR BK 07242 PG 2192

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

INSTR  20030736027
OR BK 07242 PG 2193

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

VMP-6A(FL) (0005)          Page 11 of 16          Form 3010  1/01

INSTR 20030736027
OR BK 07242 PG 2194

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

VMP-6A(FL) (0006)

Page 12 of 16

Form 3010 1/01

INSTR  20030736027
OR BK  07242 PG 2195

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

VMP-6A(FL) (0005)                     Page 13 of 16                    Form 3010  1/01

INSTR  20030736027
OR BK 07242 PG 2196

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

VMP-6A(FL) (0005)                        Page 14 of 16                        Form 3010  1/01

INSTR  20030736027
OR BK 07242 PG 2197

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____ -Witness
MIRTHA VELAZQUEZ

_____ -Witness
POLLY LINDBLOOM

_____ (Seal)        _____ (Seal)
ERIC KESSOUS            -Borrower     RONIT KESSOUS            -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                              -Borrower

(Property Address)                     (Mailing Address)
2011 TILTON CT                         2011 TILTON CT
ORLANDO, FL 32835                      ORLANDO, FLORIDA 32835

VMP-8A(FL) (0005)          Page 15 of 16          Form 3010  1/01

INSTR   20030736027
OR BK 07242 PG 2198

STATE OF FLORIDA                          *Pinellas*                 County ss:
   The foregoing instrument was acknowledged before me this *12-9-03*                          by
_____RONIT KESSOUS

who is personally known to me or who has produced ᵂ *FL Drivers License* as identification.

*Jos. M. Pugliese*
      Notary Public

Joseph M Pugliano
My Commission DD261562
Expires February 14 2006

STATE OF FLORIDA,     ORANGE COUNTY:
    The foregoing instrument was acknowledged before me this
9th day of December, 2003, by ERIC KESSOUS who is personally
known to me or who has produced _____
as identification.

*Mirtha Velazquez*
_____
Notary Public

**MIRTHA VELAZQUEZ**

Mirtha Velazquez
My Commission DD261140
Expires October 23, 2007

VMP-6A(FL) (0005)                  Page 18 of 18                  Form 3010  1/01

```
INSTR  20030736027
OR BK 07242 PG 2199
```

MIN  100103804915362692
MERS Phone: 1-888-679-6377

# ADJUSTABLE RATE RIDER
(LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this        9th       day of       DECEMBER, 2003       , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

LAKELAND REGIONAL MORTGAGE CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2611 TILTON CT, ORLANDO, FL 32835
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of        5.875        %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of       JANUARY, 2007       , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index) - Single Family - Freddie Mac UNIFORM INSTRUMENT
Form 3192 1/01

VMP-815R (0008)                         Page 1 of 4                         LENDER SUPPORT SYSTEMS INC. 815R.NEW (12/00)

INSTR  20030736027
OR BK 07242 PG 2200

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding THREE AND SEVEN EIGHTHS            percentage points (      3.875         %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than       8.875        % or less than       3.875       %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than      11.875        %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

VMP-815R (0008)                          Page 2 of 4                          Form 3192 1/01

```
INSTR  20030736027
OR BK 07242 PG 2201
```

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

VMP-815R (0008)                    Page 3 of 4                    Initials: *R·K*                    Form 3102 1/01

INSTR 20030736027
OR BK 07242 PG 2202
LAST PAGE

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
ERIC KESSOUS          -Borrower      RONIT KESSOUS          -Borrower

_____ (Seal)        _____ (Seal)
                      -Borrower                            -Borrower

_____ (Seal)        _____ (Seal)
                      -Borrower                            -Borrower

_____ (Seal)        _____ (Seal)
                      -Borrower                            -Borrower

VMP-815R (0008)            Page 4 of 4            Form 3192 3/99

This Instrument Prepared By:
Adorno & Yoss LLP
P.O. Box 143107
Miami, FL 33114-3107
A&Y # 222503.2983

ASSIGNMENT OF MORTGAGE

ORANGE COUNTY, FLORIDA

Date of Assignment: June 24 , 2009

Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., acting solely as a nominee for LAKELAND REGIONAL MORTGAGE CORPORATION

Assignee: DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE UNDER THE INDENTURE RELATING TO IMH ASSETS CORP., COLLATERALIZED ASSET-BACKED BONDS, SERIES 2007-A

Executed By: ERIC KESSOUS and RONIT KESSOUS, husband and wife

To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., acting solely as a nominee for LAKELAND REGIONAL MORTGAGE CORPORATION

Date of Mortgage: December 9, 2003

Recorded: December 26, 2003, in Official Records Book 7242, at Page 2183, of the Public Records of Orange County, Florida.

Legal Description: Lot 31, of PEMBROKE, according to the plat thereof as recorded in Plat Book 22, at Pages 7-10, Public Records of Orange County, Florida.

Property Address: 2611 Tilton Court, Orlando, FL 32835

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths Dollars and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, said Assignor hereby assigns unto the above-named Assignee, the said Mortgage together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of $184,500.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisions therein contained, and the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said presents the day and year first above written.

On June 24 , 2009      MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., acting solely as a nominee for LAKELAND REGIONAL MORTGAGE CORPORATION

Witness:

Print Name: Amanda de la Maza

By: ISABEL V. COLLERAN

Title: Assistant Secretary

Witness:

c/o Adorno & Yoss LLP
2525 Ponce de Leon Boulevard, Suite 400
Miami, Florida 33134

Print Name: Kerry Thayer

STATE OF FLORIDA

COUNTY OF MIAMI-DADE

ON June 24 , 2009, before me, the undersigned authority, a Notary Public in and for the County of Miami-Dade, State of Florida, personally appeared Isabel V. Colleran, as Assistant Secretary of , MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., acting solely as a nominee for LAKELAND REGIONAL MORTGAGE CORPORATION, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, on behalf of the Corporation.

Print Name: CONNIE RIVERO ARRESE

Notary Expires:

CC#:



CONNIE RIVERO ARRESE
MY COMMISSION # DD 651699
EXPIRES: February 14, 2013
Bonded Thru Budget Notary Services

eFiled in the Office of Clerk of Court, Orange County Florida 2011 Sep 16 04:32 PM Lydia Gardner

IN THE CIRCUIT COURT IN AND FOR THE NINTH JUDICIAL CIRCUIT OF ORANGE COUNTY, FLORIDA

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE UNDER THE INDENTURE RELATING TO IMH ASSETS CORP., COLLATERALIZED ASSET-BACKED BONDS, SERIES 2007-A,

CASE NO. 2009-CA-021456-O
Div. 37

Plaintiff,

v.

ERIC KESSOUS, et al.,

Defendants.

_____/

## ANSWER AND AFFIRMATIVE DEFENSES

The Defendant, Eric Kessous, by and through his undersigned attorneys, hereby answer the Complaint for Foreclosure of Mortgage and for Damages as follows:

### COUNT I – ACTION ON PROMISSORY NOTE

1.      Without knowledge.

2.      Defendant admits to signing note but no note is attached and therefore paragraph 2 is denied.

3.      Without knowledge.

4.      Defendant admits his failure to pay but is without knowledge as to the exact date that began.

5.      Without knowledge.

6.      Without knowledge.

7.      Without knowledge.§

{00099568.DOCX- 1}                    Page 1 of 4

## COUNT II – ACTION TO FORECLOSE MORTGAGE

8.    Without knowledge.

9.    Admitted.

10.    Without knowledge.

11.    Without knowledge.

12.    Admitted.

13.    Defendant admits to his failure to pay but is without knowledge as to the date of failure to pay.

14.    Without knowledge.

15.    Without knowledge.

16.    Without knowledge.

17.    Without knowledge.

18.    Without knowledge.

19.    Without knowledge.

20.    Without knowledge.

21.    Without knowledge.

22.    Without knowledge.

## COUNT III – REESTABLISHMENT OF NOTE

23.    Without knowledge.

24.    Without knwledge.

25.    Without knowledge.

26.    Without knowledge.

27.    Without knowledge.

28.     Without knowledge.

29.     Without knowledge.

30.     Denied.

31.     Without knowledge.

32.     Without knowledge.

## AFFIRMATIVE DEFENSES

1.      Plaintiff has violated RESPA due to its failure to provide notice to Defendant of changes of ownership and servicing of the note and mortgage.

2.      <u>Failure to Fulfill A Condition Precedent</u> – Prior to acceleration of the mortgage, the Lender is required to give notice to Defendant specifying the default; the action required to cure the default; a date, not less than thirty (30) days from the date of the notice to Defendant by which the default must be cured; and that failure to cure the default on or before the specified in the notice may result in acceleration of the sum secured by the Mortgage, foreclosure by judicial proceeding and sale of the Property. Furthermore, the notice is required to inform Defendant of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defenses to acceleration and foreclosure. (Id.) Plaintiff failed to give Defendant any such notice prior to acceleration of the sum secured by the Mortgage; therefore, Plaintiff failed to fulfill a condition precedent to the filing of the above action.

3.      This property is now, and has been, the homestead of the Defendant.

4.      Pursuant to the Ninth Judicial Circuit Court Administrative Order No. 2010-11, effective July 2, 2010, residential foreclosure cases are to be referred to the Residential Mortgage Foreclosure Mediation (RMFM) Program.

5.      Referral of this foreclosure case to mediation is appropriate at this point so as to benefit the parties to the case in minimizing the attorneys' fees, costs and time involved up front. Pursuant to the Ninth Judicial Circuit Court Administrative Order No. 2010-11, it is appropriate for the Court to send these parties to mediation in order to advance the cause of justice and allow the parties to seek resolution without wasting judicial resources.

6.      The Defendant seeks to utilize the provisions of the Home Affordable Modification Program (HAMP).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 16, 2011, I caused a true and correct copy of the foregoing to be filed using the Court's electronic filing system. I further certify that I mailed the foregoing document via U.S. Mail to the following:  Vilma Janusyte, Esq., Johnson & Freedman, LLC, 400 Northridge Road, Suite 1100 M/S 27, Sandy Springs, GA 30350, on this 16th day of September, 2011.

_/s/ Chris Cathcart_
CHRISTOPHER C. CATHCART, ESQ.
Florida Bar No. 410410
OSSINSKY & CATHCART, P.A.
2699 Lee Road, Suite 101
Winter Park, Florida 32789
Phone: (407) 629-2484/Fax (407) 629-4429
chris@ossinskycathcart.com
Attorney for Defendant ERIC KESSOUS

Search Menu  Refine Search  Back

Location : Orange County

# REGISTER OF ACTIONS
## CASE NO. 2009-CA-021456-O

| | | |
|---|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANYvs.KESSOUS, ERICet al. | § § § § § § | Case Type: CA - Mortgage Foreclosure Prop Value btwn $50,000 - 250,000 |
| | | Date Filed: 07/02/2009 |
| | | Location: Div 37 |
| | | Judicial Officer: Thorpe, Janet C |
| | | Uniform Case Number: 482009CA021456A001OX |

## PARTY INFORMATION

| | | Lead Attorneys |
|---|---|---|
| Defendant | BANK OF AMERICA<br>cd | |
| Defendant | DOE, JANE<br>pd | |
| Defendant | DOE, JOHN<br>pd | |
| Defendant | KESSOUS, ERIC<br><br>cd | ~~CHRISTOPHER CHARLES~~<br>~~CATHCART, Esquire~~<br>~~Retained~~<br>~~407-629-2464(W)~~ |
| Defendant | KESSOUS, RONIT<br>cd | |
| Defendant | PEMBROOKE HOMEOWNERS ASSOCIATION INC<br>cd | ALBERT R COOK, Esquire<br>Retained<br>407-830-4009(W) |
| Defendant | UNKNOWN SPOUSE OF ERIC KESSOUS<br>pd | |
| Plaintiff | DEUTSCHE BANK NATIONAL TRUST COMPANY  Trustee INDENTURE RELATING TO IMH ASSETS CORP | ROBYN RACHEL KATZ, Esquire<br>Retained<br>407-674-1850(W) |

## EVENTS & ORDERS OF THE COURT

**DISPOSITIONS**

| | |
|---|---|
| 03/06/2015 | **Order of Dismissal** (Judicial Officer: Thorpe, Janet C)<br>Comment (removed to federal court sent e-rec)<br>Party() |
| 02/10/2014 | **Suggestion of Bankruptcy** (Judicial Officer: Doherty, Patricia A)<br>Comment (sent to rec on 2/12/2014)<br>Party(KESSOUS, ERIC) |
| 10/10/2011 | **Notice of Dropping Party** (Judicial Officer: OKane, Julie H)<br>Comment (sent to rec 10/10)<br>Party() |

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 03/19/2015 | **Returned Mail** |
| 03/06/2015 | **Order of Dismissal** |
| 03/04/2015 | **Non-Jury Trial** (3:30 PM) (Judicial Officer Kirkwood, Lawrence R)<br>Result: Ordered |
| 03/04/2015 | **Ex Parte** (8:30 AM) (Judicial Officer Thorpe, Janet C)<br>Parties Present<br>Result: Hearing Held |
| 03/04/2015 | **Notice of Filing Notice of Removal with Attachment**<br>*COPIES ATTACHED* |
| 03/04/2015 | **Court Minutes** |
| 03/04/2015 | **Order on Motion to Withdraw as Counsel**<br>*FOR DEFENDANT: ERIC KESSOUS* |
| 03/04/2015 | **Court Minutes** |
| 03/03/2015 | **Order Denying**<br>*Motion for Extension of Time and to Reschedule Trial, Newly Discovered Evidence* |
| 03/02/2015 | **Notice of Hearing** |

**EXHIBIT B**

|            |                                                                                                          |
|------------|----------------------------------------------------------------------------------------------------------|
|            | *3/4/15 @ 9:00 Am*                                                                                        |
| 03/02/2015 | **Amended Notice of Hearing**                                                                            |
|            | *3/4/2015 9am*                                                                                            |
| 03/02/2015 | **Motion to Withdraw**                                                                                    |
| 03/02/2015 | **Motion**                                                                                                |
|            | *Exparte Motion for Extension of Time and to Reschedule Trial Newly Discovered Evidence Flroida Criminal Code 817.535 w/ Blank Order / Sent to Judge* |
| 01/26/2015 | **Notice of Filing**                                                                                      |
|            | *AMENDED AFFIDAVITS*                                                                                      |
| 01/26/2015 | **Affidavit of Costs**                                                                                    |
|            | *Amended*                                                                                                 |
| 01/26/2015 | **Affidavit of Attorney's Fees**                                                                         |
|            | *Amended of Plaintiff's Counsel Atty Fees*                                                                |
| 01/26/2015 | **Affidavit of Time**                                                                                     |
|            | *Amended Affidavit as to the Reasonableness of Plaintiff's Atty's Time*                                   |
| 01/23/2015 | **Affidavit of Non Military Service**                                                                     |
| 01/06/2015 | **Order Placing Case on Active Status**                                                                   |
| 01/06/2015 | **Order for Non Jury Trial**                                                                              |
|            | *03/04/2015 @ 3:30 PM*                                                                                    |
| 01/06/2015 | **Letter**                                                                                                |
| 12/23/2014 | **Motion**                                                                                                |
|            | *to Reinstate Action - Deutsche Bank National Trust Company*                                              |
| 02/21/2014 | **Returned Mail**                                                                                         |
| 02/14/2014 | **Order Placing Case on Inactive Status**                                                                 |
| 02/13/2014 | **Order Placing Case on Inactive Status**                                                                 |
| 02/11/2014 | *CANCELED*   **Trial** (3:30 PM) (Judicial Officer Adams, John)                                           |
|            | *Cancelled*                                                                                               |
| 02/11/2014 | **Suggestion/Notice of Bankruptcy and Auto Stay**                                                        |
|            | *(Copy Already Evented)*                                                                                  |
| 02/10/2014 | **Suggestion/Notice of Bankruptcy and Auto Stay**                                                        |
| 02/05/2014 | **Notice of Filing**                                                                                      |
| 02/05/2014 | **Compliance**                                                                                            |
| 01/03/2014 | **Lack of Prosecution** (1:30 PM) (Judicial Officer Doherty, Patricia A)                                  |
|            | *01/03/2014  Reset by Court to 01/03/2014*                                                                |
|            | Result: Hearing Held                                                                                      |
| 01/03/2014 | **Court Minutes**                                                                                         |
| 01/02/2014 | **Order for Non Jury Trial**                                                                              |
|            | *02/11/14 at 3:30 pm*                                                                                     |
| 12/19/2013 | **Notice for Trial**                                                                                      |
| 10/02/2013 | **Letter**                                                                                                |
| 10/02/2013 | **Order Approving Stipulation**                                                                           |
|            | *for Substitution of Counsel*                                                                             |
| 09/26/2013 | **Stipulation**                                                                                           |
|            | *for Substitution of Counsel for Plaintiff*                                                               |
| 09/26/2013 | **Consent**                                                                                               |
|            | *of Client*                                                                                               |
| 09/26/2013 | **Order Granting**                                                                                        |
|            | *Stipulation for Substitution of Counsel (Unsigned)*                                                      |
| 09/26/2013 | **Notice Lack of Prosecution/Motion to Dism/Notice Hearing**                                             |
|            | *01/03/2014 1:30p*                                                                                        |
| 09/04/2012 | **Notice of Designation of Email Address**                                                                |
| 12/13/2011 | **Reply**                                                                                                 |
|            | *PLAINTIFF'S REPLY TO DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES*                                        |
| 10/11/2011 | **Default Entered by the Clerk**                                                                          |
|            | *AS TO RONIT KESSOUS, BANK OF AMERICA NA*                                                                 |
| 10/10/2011 | **Motion for Default**                                                                                    |
|            | *AND DEFAULT*                                                                                             |
| 10/10/2011 | **Affidavit of Service**                                                                                  |
|            | *AFFIDAVIT OF SERVICE*                                                                                    |
| 10/10/2011 | **Summons Returned Served**                                                                               |
|            | *RETURN OF SERVICE*                                                                                       |
| 10/10/2011 | **Notice of Dropping Parties**                                                                            |
|            | *Notice of Dropping Parties*                                                                              |
| 10/10/2011 | **Affidavit**                                                                                             |
|            | *OF NON-SERVICE*                                                                                          |
| 10/10/2011 | **Affidavit**                                                                                             |
|            | *OF NON-SERVICE*                                                                                          |
| 10/10/2011 | **Affidavit**                                                                                             |
|            | *OF NON-SERVICE*                                                                                          |
| 10/10/2011 | **Notice**                                                                                                |
|            | *OF INABILITY TO DETERMINE MILITARY STATUS*                                                               |
| 10/10/2011 | **Order on Motion for Substitution of Counsel**                                                          |
| 10/04/2011 | **Affidavit of Service**                                                                                  |
|            | *amended*                                                                                                 |
| 09/16/2011 | **Answer & Affirmative Defenses**                                                                         |
|            | *Answer & Affirmative Defenses*                                                                           |
| 09/07/2011 | **Alias Summons Returned Served**                                                                         |
| 08/22/2011 | **Summons Issued Electronically as to**                                                                   |
|            | *ALIAS Summons Issued Electronically as to ERIC KESSONS*                                                  |
| 07/22/2011 | **Alias Summons Issued**                                                                                  |
|            | *ALIAS CIVIL ACTION SUMMONS PERSONAL SERVICE ON A NATURAL PERSON*                                         |
| 05/13/2011 | **Motion**                                                                                                |
|            | *PLAINTIFF'S MOTION FOR SUBSTITUTION OF COUNSEL*                                                          |
| 04/22/2011 | **Notice Appearance of Counsel**                                                                          |
|            | *UNOPPOSED NOTICE APPEARANCE OF COUNSEL NOTICE OF APPEARANCE*                                             |
| 11/29/2010 |                                                                                                          |
|            | **Notice of Change**                                                                                      |

|  | | |
|---|---|---|
| | *of firm name* | |
| 09/08/2009 | Summons Returned Unserved | |
| 08/08/2009 | Summons Returned Served | |
| 09/04/2009 | Summons Returned Unserved | |
| 09/03/2009 | Summons Returned Unserved | |
| 09/03/2009 | Summons Returned Unserved | |
| 08/20/2009 | Summons Returned Served | |
| 08/13/2009 | Notice of Filing | |
| 08/04/2009 | Summons Returned Served | |
| 07/28/2009 | Answer | |
| | *Answer* | |
| 07/15/2009 | Summons Issued | |
| | *ORIG TO ACER $10.00* | |
| 07/15/2009 | Summons Issued | |
| | *ORIG TO ACER $10.00* | |
| 07/15/2009 | Summons Issued | |
| | *ORIG TO ACER $10.00* | |
| 07/15/2009 | Summons Issued | |
| | *ORIG TO ACER $10.00* | |
| 07/15/2009 | Summons Issued | |
| | *ORIG TO ACER $10.00* | |
| 07/15/2009 | Summons Issued | |
| | *ORIG TO ACER $10.00* | |
| 07/15/2009 | Summons Issued | |
| | *ORIG TO ACER $10.00* | |
| 07/02/2009 | Lis Pendens | |
| 07/02/2009 | Complaint | |
| 07/02/2009 | Value of Real Property/Mortgage Foreclosure Claim Form | |
| 07/02/2009 | Civil Cover Sheet | |

---

### FINANCIAL INFORMATION

| | | | | |
|---|---|---|---|---|
| | Plaintiff DEUTSCHE BANK NATIONAL TRUST COMPANY | | | |
| | Total Financial Assessment | | | 975.00 |
| | Total Payments and Credits | | | 975.00 |
| | Balance Due as of 04/22/2015 | | | 0.00 |
| 07/07/2009 | Transaction Assessment | | | 905.00 |
| 07/07/2009 | Transaction Assessment | | | 70.00 |
| 07/07/2009 | Counter Payment | Receipt # CV-2009-46635 | BARNS, PAUL DRYDEN, Esquire | (975.00) |